UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                              Criminal Case No. 22-20417
                              Honorable Linda V. Parker

MICHAEL DESHAWN HAYWOOD,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTON FOR BOND (ECF NO. 20) AND MOTION TO DISMISS (ECF NO. 22)

Defendant Michael Deshawn Haywood is charged in a three-count Indictment with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute a controlled substance (cocaine base) in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  (ECF No. 1.)  On September 9, 2022, a magistrate judge ordered Haywood detained pending trial after finding clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  (ECF No. 13.)  The matter is presently before the Court on Haywood's Motion for Bond (ECF No. 20) and Motion to Dismiss for

Failure to Preserve and Disclose Evidence (ECF No. 22).  The motions have been fully briefed and the Court held a hearing on both motions on February 9, 2023.

## Motion for Bond (ECF No. 20)

## Applicable Standard

The review of detention orders is governed by the Bail Reform Act, which provides in relevant part:  "If a person is ordered detained by a magistrate judge . . . that person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  18 U.S.C. § 3145(b).  The Court reviews the appeal of a detention order de novo.  *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); *see also United States v. Koubriti*, No. 01-cr-80778, 2001 WL 1525270 (E.D. Mich. 2001) (noting that, although the Sixth Circuit has not squarely identified the proper standard of review of a magistrate judge's detention order, the majority of the circuits considering the issue hold that de novo review is appropriate).

"The default position of the law . . . is that a defendant should be released pending trial."  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  Nevertheless, under the Bail Reform Act, "a defendant may be detained pending trial . . . if a judicial officer 'finds that no condition or combination of conditions

will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Id*. (quoting 18 U.S.C. § 3142(e)). A judge's finding of dangerousness must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). In comparison, a risk of flight must be supported "by a preponderance of the evidence." *Hinton*, 113 F. App'x at 77. "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.*

The Bail Reform Act lists four factors courts must consider when deciding release decisions. 18 U.S.C. § 3142(g). First is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking of children or by force, fraud, or coercion], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device[.]" *Id.* § 3142(g)(1). The second and third are "the weight of the evidence against the person" and the individual's "history and characteristics[.]" *Id.* § 3142(g)(2), (3). The latter includes:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug

3

or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

*Id.* § 3142(g)(3). The final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4).

## Analysis

There is clear and convincing evidence that Haywood's detention is necessary to protect the safety of the community. Haywood's behavior, as presented by the Government, raises significant concerns that he poses a danger to other persons if released.

First, the pending charges against Haywood involve controlled substances and a firearm. Also, when police attempted to stop the Ford Explorer which Haywood allegedly was driving for speeding, the driver failed to stop and then led officers on a car chase through a residential area. The driver then attempted to flee on foot. When police detained Haywood, who they believe was the driver of the Explorer, he possessed a handgun and bag of crack cocaine. In the Explorer, officers found a second handgun, additional baggies of crack cocaine, and other items associated with drug distribution.

4

The weight of the evidence concerning Haywood's dangerousness is strong. Haywood has a lengthy history of assaultive behavior, including offenses committed with firearms and while on probation or parole. In 2004, he robbed a liquor store at gunpoint and subsequently pled guilty to assault with intent to rob while armed. He was sentenced to probation. Haywood violated his probation on two occasions. Within a year of being discharged on parole, Haywood was charged and pled no contest to misdemeanor domestic violence.

Less than six months later, he was charged in two separate cases for pointing a handgun at a female victim. In the second incident, responding officers found two handguns in Haywood's possession. Haywood pled guilty in both cases in February 2015, and was subsequently sentenced. He was paroled in October 2017, but returned to prison in June 2018 after violating his parole, including by engaging again in assaultive behavior with respect to another female victim.

He was released from state custody in June 2021. Haywood's arrest, which led to the current charges, occurred a little less than a year later, on July 21, 2022. In August 2022, Haywood's ex-wife obtained a domestic personal protection order against him.

These circumstances lead the Court to conclude that there are no conditions that will ensure that Haywood does not possess and use handguns to threaten

5

members of the community if released on bond for the current offenses. Haywood's criminal history reflects that he is a danger to the community.

## Motion to Dismiss (ECF No. 22)

### Background

Haywood asks the Court to dismiss the Indictment as a sanction for the Government's failure to comply with *Brady v. Maryland*, 373 U.S. 87 (1963), and *Arizona v. Youngblood*, 488 U.S. 51 (1988). Specifically, Haywood maintains that the Government failed to preserve and disclose the following: (1) exculpatory and impeaching statements by Samuel Stanley, who saw the driver of the fleeing Ford Explorer on July 21, 2022, and described that individual to two police officers at the scene; (2) notes from one of the officers who interviewed Stanley; and (3) video from the dashboard camera of the police vehicle driven by Ypsilanti Police Department Lieutenant Robert Murphy.

The Government provided Haywood with Stanley's name and contact information, and Haywood's investigator interviewed Stanley on November 2, 2022. Stanley told the investigator that he was certain he saw the driver of the Explorer, and the driver "was not wearing a hat" and was a large black male, weighing "over 265 pounds." (*See* ECF No. 22-2 at Pg ID 82.) This is contrary to

6

the police report which describes the driver as wearing a red hat. (*See* ECF No. 32-2 at Pg ID 219.) Also, according to Haywood, he weighs only 170 pounds.

Stanley also told Haywood's investigator that he shared a description of the fleeing driver with two police officers at the scene: a female officer, who was Caucasian and blonde, and a male officer. (*See* ECF No. 22-2 at Pg ID 82.) Those officers have been identified, respectively, as Eastern Michigan University Police Department Officer Diana Spokas and Ypsilanti Police Department Officer Glen Lyons.

Although the Ypsilanti Police Department initially told the Government that there were no available written notes from Haywood's arrest, the Government subsequently obtained notes Officer Lyons took while speaking to Stanley. In these notes, Officer Lyons recorded "Lrg B/M" [large black male] and "Blk shirt", along with Stanley's name and phone number. (*See* ECF No. 32 at Pg Id 194.) Officer Spokas did not take any written notes. While Officer Spokas told the Government that there likely was video footage from her body camera, she also indicated that such footage would have been destroyed in accordance with EMU Police Department retention policies. (*Id.* at Pg ID 196.)

## Analysis

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. This rule "encompasses impeachment evidence as well as exculpatory evidence[.]" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id*. (quoting *Bagley*, 473 U.S. at 682). The Supreme Court has identified "three components" of a *Brady* violation. *Id.* at 281-82. "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.*; *see also McNeil v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021) (quoting *Strickler*, 527 U.S. at 281-282).

Starting with the evidence related to Stanley, the exculpatory material was obtained by Haywood prior to trial. The Sixth Circuit has "held that '*Brady* generally does not apply to delayed disclosure of exculpatory information, but only

8

to a complete failure to disclose' and that a 'delay only violates *Brady* when the delay itself causes prejudice.'" *United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006) (quoting *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994)); *see also United States v. Blackwell*, 459 F.3d 739, 759 (6th Cir. 2006) (citing *Blood* and finding no *Brady* violation where the defendant received the evidence during trial). Haywood has not identified prejudice resulting from delay.

He asserts that "[t]he erosion of the eyewitness's memory over time is exactly the reason why Officer Lyons and Officer Spokas' immediate disclosure of the eyewitness's statements made on scene was so important." (ECF No. 34 at Pg ID 253.) However, this does not demonstrate prejudice due to the alleged delay in producing evidence concerning Stanley. Haywood's investigator interviewed Stanley less than four months after Haywood's arrest and obtained a sworn statement from him. There is no indication that Stanley forgot any details by the time he was interviewed or even by the date of the motion hearing.

In his reply brief, Haywood refers to the Government's "acknowledge[ment] that [Stanley]'s 'memory about what *exactly* he told officers on the day of Haywood's arrest may not be accurate.'" (ECF No. 34 at Pg ID 253 (quoting ECF No. 32 at Pg ID 203) (emphasis by Government).) First, it is unclear whether the Government is simply offering that Stanley's memory "may" be inaccurate or that

9

there in fact is some indication that it is. Second, no specifics are provided as to which of Stanley's statements lack accuracy and thus no way to discern their exculpatory or useful nature. Relatedly, it is unclear whether this unexplained change in Stanley's description of the events benefits Haywood or the Government. The assertion originates with the Government. Thus, presumably, the suggestion is that *exculpatory* information (or at least information helpful to Haywood) that Stanley shared with Defendant's investigator and/or the Government was not shared with the officers at the scene and is therefore subject to challenge.[1] At this point, this statement offers no concrete evidence from which to find prejudice.

As to any footage from Officer Spokas' body camera, in *California v. Trombetta*, 467 U.S. 479 (1984), the Supreme Court set forth the following test for assessing the materiality of destroyed evidence:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be

---

[1] To the extent this is what the Government is asserting and is part of the Government's planned trial strategy, the destruction of the footage from Officer Spokas' body camera may have different significance impacting whether the Court allows the Government to make this claim or decides that the destruction of the footage necessitates a curative instruction.

10

>unable to obtain comparable evidence by other reasonably available means.

*Id.* at 488-89 (internal citation omitted). As to the first condition, the Court finds it significant that Officer Spokas is an EMU police officer and was only minimally involved in Haywood's arrest. The footage from her body camera presumably was destroyed by the EMU Police Department, not the Ypsilanti Police Department which initiated and led the chase of the Ford Explorer and effectuated and processed Haywood's arrest. Thus, it is unclear whether the exculpatory value of the footage would have been apparent to the EMU Police Department before the footage was destroyed.

However, *Trombetta*'s second condition is not satisfied even if the Court assumes the footage had an apparent exculpatory value. Haywood was provided Stanley's name and contact information, Haywood's investigator interviewed Stanley and obtained a sworn statement within four months of the incident, and Stanley is an available and willing trial witness. (*See* ECF No. 32 at Pg ID 203 ("Stanley told [ATF] Agent Parsons that he would 'be there' [at trial] if he was needed").) Thus, Haywood has been able to obtain evidence comparable to the body camera footage through "other reasonably available means. *See Elmore v. Foltz*, 768 F.2d 773, 777-78 (6th Cir. 1985) (finding no due process violation arising from the government's destruction of tapes of interactions between the

11

defendant and a confidential informant because the defendant retained tools to impeach the informant's testimony, even though "no better tool exist[ed] for impeaching [the informant] than a tape directly contradicting him . . . [u]nder *Trombetta* . . . all that matters is that *some reasonable* alternative means exists for attempting to do what one would have attempted to do with the destroyed evidence") (emphasis added); *see also United States v. Gravely*, No. 09-13-GFVT-02, 2011 WL 112468, at * (E.D. Ky. Jan. 13, 2011) (citing *Elmore* and finding that the destruction of surveillance video taken outside the prison cell where the defendant allegedly murdered a fellow inmate did not violate due process because the defendant had access to comparable evidence through alternative means, even if those means were "inferior"). There is no indication that footage from Officer Spokas' body camera would have revealed additional exculpatory or impeaching evidence or evidence Haywood has not obtained directly from Stanley already.

To the extent the footage from Officer Spokas' body camera contained other evidence that is or has not been available from Stanley, the exculpatory value or usefulness of that evidence to Haywood is unknown. A showing of bad faith is required to establish a constitutional violation when the government fails to preserve "potentially useful evidence[.]" *Arizona v. Youngblood*, 488 U.S. 51, 58

(1988). There is no indication that the destruction of the footage was done in bad faith. *Id*. at 58.

"The presence or absence of bad faith by the police for the purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (quoting *Youngblood*, 488 U.S. at 56-57 n. *). As discussed, it was the EMU Police Department, not the Ypsilanti Police Department, that destroyed the body camera footage, and there has been no evidence presented suggesting that the EMU Police Department would have known the exculpatory value of Stanley's statements at the time.

As to dashboard camera video from Lieutenant Murphy's vehicle, the Government represents that such footage never existed because the vehicle lacked a functional camera.² (*See* ECF No. 32 at Pg ID 195.) The Government cannot disclose or preserve what never existed. But even if a video existed at one time,

---

² The Court accepts the Government's representation for purposes of deciding Haywood's pending motion and declines to hold an evidentiary hearing to receive whatever evidence supports it, particularly because there are other reasons to deny the motion even if video had been taken from Lieutenant Murphy's vehicle. Nevertheless, Haywood is entitled to evidence supporting the Government's representation and the Government should provide him with that evidence. If the Government is unwilling to do so or what the Government produces raises issues, either party is welcome to request a status conference with the Court.

13

there is no indication that it offered exculpatory or potentially useful evidence. The lead police vehicle in the chase of the Explorer was driven by Ypsilanti Police Department Officer Jared Gorman. Dashboard camera video from Gorman's vehicle was produced to Haywood. Lieutenant Murphy was driving behind Gorman's vehicle. There is no due process violation when the destroyed evidence is only "of speculative exculpatory value." *Jobson*, 102 F.3d at 219 (quoting *Jones v. McCaughtry*, 965 F.2d 473, 479 (7th Cir. 1992)). And there is no evidence that the destruction was in bad faith.

## Conclusion

For the reasons set forth above, the Court holds that the order detaining Defendant prior to trial should not be revoked and that the Indictment should not be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Bond (ECF No. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for

Failure to Preserve and Disclose Evidence (ECF No. 22) is **DENIED**.

                                                      s/ Linda V. Parker
                                                      LINDA V. PARKER
                                                      U.S. DISTRICT JUDGE

Dated: March 10, 2023